[626 NYS2d 100]

In the Matter of JOHN SATTA, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 2, 1995

### APPEARANCES OF COUNSEL

*Barbara S. Gillers* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*John Satta,* respondent *pro se.*

### OPINION OF THE COURT

Per Curiam.

Respondent, John Satta, was admitted to the practice of law

in the State of New York by the First Judicial Department on January 13, 1956. At all times pertinent to this proceeding respondent has maintained an office for the practice of law within the First Judicial Department.

By motion dated January 9, 1995, the Departmental Disciplinary Committee is seeking an order pursuant to Rules of this Court (22 NYCRR) § 603.4 (e) (1) (ii) and (iii) suspending respondent from the practice of law forthwith based upon substantial admissions under oath that he has committed serious acts of professional misconduct and upon other uncontested evidence of professional misconduct.

In 1993, the Committee received a complaint from Suzette Woodberry alleging that respondent neglected to obtain the return of a "binder" she paid in connection with the purchase of a house and improperly failed to reimburse her for certain wage garnishments.

Respondent's answer to the Woodberry complaint is still under consideration by the Committee. However, while investigating the Woodberry complaint, the Committee asked respondent and Citibank for records of respondent's escrow accounts for the relevant periods. According to the Committee, a review of those records revealed that respondent has engaged in professional misconduct in connection with an escrow account he maintained between 1988 and 1992. The Committee states that the misconduct consists of, *inter alia,* commingling personal funds with client funds, failing to keep appropriate records, writing checks to cash, and making cash withdrawals from the escrow account using an automatic teller machine (ATM). The last statement for the 1988-1992 escrow account indicates that it was closed as of May 12, 1992.

On November 22, 1994, respondent told Committee staff that he had recently opened a new escrow account, which will be referred to as the 1994 escrow account.

On or about December 6, 1994, the Committee received three dishonored check notices from the Lawyers' Fund for Client Protection. These notices concerned four checks totalling approximately $24,000.

On or about December 12, 1994, the Committee sent respondent a *sua sponte* complaint based on the notices from the Lawyers' Fund and requested documents and information concerning the 1994 escrow account. Respondent's answer to the Committee's *sua sponte* complaint was due by January 3, 1995. As of the date of the Committee's motion, respondent had failed to respond.

The Committee took respondent's statements under oath on several days in February, March and November 1994. The Committee states that bank statements and respondent's testimony demonstrate that between September 1988 and August 1991, respondent placed settlement funds obtained on behalf of clients into the 1988-1992 escrow account. Documentary evidence and respondent's sworn statements demonstrate that during that period of time respondent improperly commingled personal funds with client funds and used money from the 1988-1992 escrow account to pay personal debts. In addition, respondent wrote checks to cash and withdrew cash through an ATM on the 1988-1992 escrow account. Bank statements show that the 1988-1992 escrow account had an overdraft charge on January 3, 1992 and a returned check on February 3, 1992.

With respect to the 1994 escrow account, the Committee states that until now respondent had provided no documents and no answer to the complaint as requested by the Committee. The Committee claims that the documents respondent has submitted are incomplete.

In opposition to the Committee's motion, respondent asserts that the question about his alleged commingling of funds came about as a result of his production of bank records during the Committee's investigation of the Woodberry complaint. Respondent claims that it is significant that no client has complained that he has deprived them of their funds and he contends that he has not. Respondent admits that he did disburse funds from his escrow account for his personal purposes, but he claims that those funds represented fees that were due him for legal services rendered.

Respondent further asserts that he is 64 years old and in April 1993, he suffered a stroke from which he is slowly recovering. Respondent also sets forth the numerous personal and financial problems that he has confronted both prior to and since his stroke. Respondent states that he has limited the number of matters he handles because of his physical limitations. To restrain him from continuing to handle these matters would cause great inconveniences if not irreparable harm to the clients as well as to himself. Respondent claims that his continuing activity will in no way impede the Committee's work and he points out that he has cooperated in producing documents and being interrogated under oath.

22 NYCRR 603.4 (e) (1) provides as follows:

"An attorney who is the subject of an investigation, or of charges by the Departmental Disciplinary Committee of professional misconduct, or who is the subject of a disciplinary proceeding pending in this court against whom a petition has been filed pursuant to this section, or upon whom a notice has been served pursuant to section 603.3 (b) of this Part, may be suspended from the practice of law, pending consideration of the charges against the attorney, upon a finding that the attorney is guilty of professional misconduct immediately threatening the public interest. Such a finding shall be based upon * * *

"(ii) a substantial admission under oath that the attorney has committed an act or acts of professional misconduct, or

"(iii) other uncontested evidence of professional misconduct".

Respondent's sworn admissions made during the course of depositions before the Committee as well as the bank statements from respondent's escrow accounts establish that respondent has commingled personal funds with client funds, failed to keep appropriate records, written checks to cash, and made cash withdrawals from the escrow accounts using an automatic teller machine. In response to the Committee's motion to suspend, respondent does not deny that he has engaged in such misconduct but rather attempts to offer evidence in mitigation. Respondent admits that he disbursed funds from the escrow accounts for personal purposes but claims that the funds he withdrew were funds that were due him for legal services rendered.

In February 1979, this Court ordered respondent disbarred after he had been found guilty of, *inter alia,* neglecting many clients' matters and failing to respond fully, or in some cases, at all, to the Committee's requests for information and documents. *(Matter of Satta,* 66 AD2d 491 [1st Dept 1979].) Three months later, the Court stayed its order of disbarment (but suspended respondent pending further proceedings) and ordered, *inter alia,* that a psychiatrist "review the record, examine respondent and report to th[e] [C]ourt." *(Matter of Satta,* 71 AD2d 292, 293 [1st Dept 1979].) Thereafter, the Court ordered respondent suspended for one year, beginning December 13, 1979.

In 1983, respondent moved for reinstatement, and the Court referred the matter for a hearing. *(Matter of Satta,* 95 AD2d 673 [1st Dept 1983].) In January 1984, the Court denied

respondent's reinstatement. *(Matter of Satta,* 99 AD2d 442 [1st Dept 1984].) Three months later, the Court granted the reinstatement. *(Matter of Satta,* 100 AD2d 783 [1st Dept 1984].)

In 1991, respondent was admonished by the Committee for neglecting a client matter.

In light of the clear evidence which has been presented of respondent's serious professional misconduct, as well as the fact that he has a disciplinary history for neglect, it appears to be in the public interest to suspend respondent from the practice of law. *(See, Matter of Baumgarten,* 197 AD2d 309 [1st Dept 1994].)

Accordingly, this Court grants the Committee's motion and respondent is suspended from the practice of law pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii), effective immediately, and until such time as the disciplinary matters before the Committee have been concluded and until further order of this Court.

MURPHY, P. J., SULLIVAN, ROSENBERGER, ELLERIN and ROSS, JJ., concur.

Respondent suspended from practice as an attorney and counselor-at-law in the State of New York, effective immediately, and until such time as the disciplinary matters pending before the Departmental Disciplinary Committee have been concluded, and until the further order of this Court.